IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| OREGON CITY BPOE #1189, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130028C |
| | ) | |
| v. | ) | |
| | ) | |
| CLACKAMAS COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

## I.  INTRODUCTION

Plaintiff has appealed the disqualification of a portion of its property, identified in the assessor's records as account number 00572614, for the 2012-13 tax year.  (Ptf's Compl at 1.) Trial was held in the courtroom of the Oregon Tax Court in Salem on June 27, 2013. Plaintiff was represented by Jon S. Henricksen, Attorney at Law, Oregon City.  Defendant was represented by Linda Dunn, Assessment Supervisor, and Amanda Olson, Assessment and Taxation Specialist, Clackamas County Assessor's Office.

## II.  STATEMENT OF FACTS

The parties have essentially stipulated to the pertinent facts set forth below, either by formal written stipulation (five items have been so stipulated), or through the parties' mutual agreement at the commencement of the trial that the documents each party submitted prior to trial are an accurate reflection of the true state of affairs (*i.e.*, that the documentary evidence is factually true and accurate).

Plaintiff, commonly known as the Oregon City Elks Lodge, is a fraternal organization as described under ORS 307.134.  Plaintiff is entitled to receive exemption from property taxation under ORS 307.136 for at least a portion of a three-story building (subject property) located at

610 McLoughlin Boulevard in Oregon City. (Def's Ex A at 3.) The entire building received exemption from property taxes until the 2012-13 tax year.

The parties have stipulated that the building consists of a basement, a ground floor, and top floor[1] with the following square footages:

| | |
|---|---|
| Basement: | 14,967 square feet |
| Ground floor: | 14,918 square feet |
| Top floor (area in question): | 11,919 square feet |
| Total square footage: | 41,804 square feet |

(Stip Facts at 2.)

On or about October 2012 Defendant disqualified the top floor of the building from exemption based on a complaint forwarded to the Clackamas County Assessor by the Oregon Department of Justice (Oregon DOJ). (Def's Ex A at 3; Def's Ex E at 1-2.) After receiving that complaint from the Oregon DOJ, Defendant performed some internet research and, on September 12, 2012, had an appraiser inspect the subject property. (Def's Ex A at 3.) The appraiser concluded that the third floor "was being leased and used by * * * Portland Catering Company for activities such as weddings, receptions, meetings, parties and catering activities. There was no evidence that any portion of the third floor was being used by the Elks for Lodge activities." (*Id*. at 4.) Defendant determined that "the entire third floor should be subject to property taxation for the 2012-13 tax year." (*Id*.) Based on that determination, Defendant concluded that the nonexempt portion of the building had a taxable assessed value of $237,798.[2]

---

[1] The building is apparently a split-level entry type structure; upon entry to the building one encounters a short flight of stairs downward providing access to the "basement," and another short flight of stairs upwards leading to the main or "ground" floor. The area in dispute is above the ground floor and referred to by the parties as the "top floor."

[2] While the parties have stipulated to that fact (assessed value), the tax statement for the subject property that Defendant sent Plaintiff for the 2012-13 tax year indicates that the real market value of the building is $284,570 and the assessed value is $234,798. (Ptf's Compl at 3.) It therefore appears to the court that the assessed value of the taxable portion of the building is $234,798, unless Defendant did subsequent calculations and came up on a slightly higher number. However, there is insufficient information in the record to draw such a conclusion. The

There is no dispute about the exempt status of the basement and ground floor. Those two floors are used by Plaintiff for its fraternal operations.

## III. ISSUE

The sole question is whether the top floor, which Plaintiff leases to a nonexempt third party, Portland Catering Company, qualifies for exemption.

## IV. ANALYSIS

Plaintiff is a qualifying fraternal organization under ORS 307.134.[3] As such, it is entitled to property tax exemption under ORS 307.136 provided the property is occupied and used in accordance with the statute. Portions of property occupied or used by fraternal or lodge organizations in their fraternal or lodge work or for their entertainment or recreational purposes is entitled to exemption. The trickier question, which this case presents, is whether property leased or rented by a lodge "to other persons" is entitled to exemption, where the tenant or lessee uses the space for nonexempt purposes. The statute provides, in relevant part:

> "Upon compliance with ORS 307.162 [claiming exemption], the following property owned or being purchased by fraternal organizations shall be exempt from taxation:
>
> "(1) All the real or personal property, or portion thereof, which is actually occupied or used in fraternal or lodge work or for entertainment and recreational purposes by one or more fraternal organizations, except that property or portions of property of a fraternal organization rented or leased by it at any time to other persons for sums greater than reasonable expenses for heat, light, water, janitorial services and supplies and facility repair and rehabilitation shall be subject to taxation."

ORS 307.136(1).

/ / /

---

court, therefore, simply notes the apparent disparity and will leave it to the parties to resolve the matter, if either party determines an adjustment is warranted.

[3] All references to the Oregon Revised Statutes (ORS) are to 2011.

The burden of proving entitlement to an exemption is on the party claiming the exemption. In analyzing exemption cases, the court is guided by the principle that taxation is the rule, and exemption from taxation is the exception. *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.,* 301 Or 423, 426-27, 723 P2d 320 (1986). Courts are to interpret exemption statutes with a strict, yet reasonable construction to achieve the legislature's intent. *SW Oregon Pub. Def. Services v. Dept. of Rev.,* 312 Or 82, 88-89, 817 P2d 1292 (1991). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *North Harbour Corp. v. Dept. of Rev.,* 16 OTR 91, 95 (2002).

The general rule appears in the first half of the sentence in subsection (1) of the statute, which exempts "[a]ll the real or personal property, or portion thereof, which is actually occupied or used in fraternal or lodge work or for entertainment and recreational purposes by one or more fraternal organizations." ORS 307.136. The question comes with how to read and apply the second half of the sentence, which includes a qualifier: "except that property or portions of property of a fraternal organization rented or leased by it at any time to other persons for sums greater than reasonable expenses for heat, light, water, janitorial services and supplies and facility repair and rehabilitation shall be subject to taxation."

At trial, Plaintiff argued that a fraternal organization can occupy a portion of a building, lease a portion of the building to a non-fraternal organization, and continue to qualify for the exemption provided the lease payments received from the non-fraternal organization do not exceed the reasonable expenses for the entire building for heat, light, water, etc. Plaintiff argues

/ / /

that the lease payments it receives from Portland Catering Company do not exceed reasonable expenses for the entire building for heat, light, water, etc.

Plaintiff contends that this case is "remarkably similar" to an earlier case decided by this court. *See BPOE Lodge #1247 v. Klamath County Assessor*, TC-MD No 020080C (Nov 27, 2002) (*Klamath*). In that case, a fraternal organization owned and occupied a three story building, and leased the first floor (45 percent of the entire building) to a restaurant. The issue for the court was whether the rents charged by Plaintiff to the tenant operating the restaurant exceeded the "reasonable expenses for heat, light, water, janitorial services and supplies and facility repair and rehabilitation," as provided in ORS 307.136(1). While the plaintiff in the *Klamath* case argued for a "reasonableness" test, whereby rent can be charged to a nonqualifying tenant provided it reasonably approximates expenses for the space leased, it also contended, as does Plaintiff in the instant case, that "an organization can recover [through rent payments from a tenant] the entire cost to the building for all heat, light, water, janitorial services and supplies and facility repairs and rehabilitation." (*Klamath*, slip op at 4.) The court in the *Klamath* case found it unnecessary to decide the validity of the broader interpretation of the statute urged by the plaintiff because the evidence found by the court showed that the rent paid by the nonexempt tenant closely approximated the expenses attributable to the space leased by the tenant, and was therefore reasonable. (*Id*. at 5, 9.)

Arguing from the *Klamath* case, Plaintiff stated that: (1) the statute does not require the amount of the expenses to be limited to only that portion occupied by the tenant; and (2) even if a statute is to be construed in that manner, the amount of rent payments Plaintiff received from its tenant are within the range allowed in the *Klamath* case.[4] Plaintiff provided expense

---

[4] In the *Klamath* case the court found the tenant occupied 60 percent of the building and the associated expenses were nearly identical to the rent the lodge charged that tenant.

information for the entire building. Counsel began by presenting the figures in calendar years, but then attempted to convert the data to fiscal years. The result was somewhat difficult for the court to follow. There is, however, no dispute over the amount of space Plaintiff leases: 28.5 percent of its building (11,919 sq. ft. leased ÷ 41,804 total sq. ft.). And the court is able to fairly and accurately calculate income and expenses from the testimony and documentary evidence submitted at trial. Analyzing that evidence, it appears that Plaintiff charged the tenant approximately $40,000 per year in rent,[5] and the annual amortized expenses[6] (including two large periodic expenses for a new roof and HVAC) were approximately $93,000 for 2010, 2011 and 2012.[7] Even though only the 2012-13 tax year is at issue (a fiscal year beginning on July 1, 2012 and ending June 30, 2013), the three year's of income and expense data was deemed relevant by Plaintiff's counsel to give the court an accurate picture of Plaintiff's operations, given that several long-lived items were replaced on or just prior to the tax year at issue. The court finds that three-year window helpful.

According to Plaintiff, the amount of rent charged to the tenant was "roughly" 38 percent of the total building expenses for the 2012-13 tax year (the year in question). Plaintiff asserted that, given the decision in *Klamath*, charging the tenants 38 percent of the building's total

---

[5] Plaintiff reported rent for calendar years 2010, 2011, and 2012 of $40,100, $33,300, and $43,800, respectively.

[6] Items replaced during the years in question, with payments straddling several years, at a total reported cost of approximately $130,000.

[7] Plaintiff's actual reported expenses were approximately $50,000 per year ($47,769 in calendar year 2011 and $52,324 in 2012), plus $129,300 for the new roof and HVAC, the latter amounting to approximately $43,000 per year over the three years of reported income and expenses including the 2012 assessment year (2010, 2011, and 2012). At trial, counsel for Plaintiff testified that expenses were $108,759, $111,108, and $115,351, respectively for 2010 through 2012, plus approximately $96,000 for a new roof and $33,300 for a new HVAC system. However, the court cannot reconcile those figures with documentary evidence submitted. It was incumbent upon Plaintiff, as the party seeking affirmative relief, to establish its case by a preponderance of the evidence as required by ORS 305.427. To do that, the court needs reliable substantiation for items such as income and expenses in a case such as this, rather than the testimony of Plaintiff's counsel.

expenses is certainly within a reasonableness range. The "reasonableness" test presented by Plaintiff comes from the language in the statute entitling a large or fraternal organization to property tax exemption provided any "portions of the property * * * rented or leased by it at any time to other persons [does not exceed] sums greater than reasonable expenses for heat, light, water, janitorial services and supplies and facility repair and rehabilitation." ORS 307.136(1). The court calculates the rent charged by Plaintiff to be 43 percent of the total building expenses ($40,000 annual rent ÷ $93,000 annual expenses). As indicated above, the tenant occupied 28.5 percent of the building. Plaintiff's primary argument is that the rent charged was "reasonable" when compared to expenses associated with the leased premises. The court agrees.

Defendant argued that the tax exempt status for the leased portion of Plaintiff's property should be changed to taxable status for the 2012-13 tax year because the leased portion "is in the possession of and used by an organization other than the Elks Lodge. It is used by Pacific Crest Grand Ballroom, which does not qualify for property tax exemption as a fraternal organization, and has not filed an application for exemption on its own behalf." (Ptf's Compl at 2.) At trial Defendant stated that they did not remove an exemption from any part of the property that Plaintiff is using for its purposes. Defendant testified that it believes that ORS 307.136 exempts only property that is occupied by an exempt organization, "but the upper floor is not used by the fraternal organization in anyway," so it does not qualify for exemption. "Oregon City Elks Lodge does not occupy or use the third floor of the building in question, and, therefore, is not entitled to property tax exemption for that portion of the property." (Def's Ex A at 3.) Defendant did not address Plaintiff's argument for qualification under the "exception" in ORS 307.136(1). Defendant did not provide any support for its contention that a nonprofit entity

///

DECISION  TC-MD 130028C                                                                              7

may only lease portions of its premises to other nonprofit entities and there is nothing in the statute to indicate that the legislature intended such a limitation.

The exemption statute for lodges and fraternal organizations differs from the statutes exempting art museums, volunteer fire departments, incorporated literary, benevolent, charitable and scientific institutions and religious organizations,[8] in that those organizations are only entitled to exemption for the portions of their property they actually use in their benevolent endeavors, whereas it would appear under ORS 307.136(1), lodges and fraternal organizations can receive exemption for their entire property, notwithstanding the fact that they rent or lease portions of their property (or the entire property) to "other persons," provided they do not charge "sums greater than reasonable expenses for heat, light, water, janitorial services and supplies and facility repair and rehabilitation." At least that is how the court reads the relevant exemption statute. It could be that the legislature contemplated short-term leases and rentals of qualifying fraternal organizations and lodges for activities such as weddings and birthday parties, in which case, under the wording of the statute, "property or portions of property of a fraternal organization rented or leased by it at any time to other persons" nonetheless entitles the organization to an exemption on its property. However, the statute in its present form would appear to extend the exemption to such organizations under far more generous terms than other qualifying organizations that do not include the exception in ORS 307.136(1) for the rental or leasing of property to nonqualifying entities under fairly generous terms. However, the court's decision in the instant case does not require it to render an opinion on the scope of the statute because under the plain wording of the statute the court finds Plaintiff is, or was, leasing its property for a sum no greater than reasonable to cover expenses.

---

[8] The statutes exempting those organizations include ORS 307.130 and ORS 307.140.

V. CONCLUSION

The evidence shows that the rent Plaintiff charged for the space in its building that it leased to a non-fraternal organization did not exceed "sums greater than reasonable for heat, light, water, janitorial services and supplies and facility repair and rehabilitation" associated with the rented space, as provided in ORS 307.136. Accordingly, Plaintiff is entitled to an exemption under ORS 307.136 for the entire building for the 2012-13 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that the subject property qualifies for property tax exemption in its entirety and that Defendant erred in disqualifying the leased portion of the building from property tax exemption for the 2012-13 tax year.

Dated this ____ day of July 2013.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on July 31, 2013. The Court filed and entered this Decision on July 31, 2013.*